UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS MCCOOL, BRIAN MCCOOL, And MEGHAN MCCOOL, <br><br>Plaintiffs, <br><br>v. <br><br>PHILLIPS ACADEMY, TRUSTEES OF PHILLIPS ACADEMY and SUSAN ESTY <br><br>Defendants | CIVIL ACTION NO.: |

**PLAINTIFFS' COMPLAINT AND CLAIM FOR JURY TRIAL**

**SUMMARY OF THE CASE**

This action arises from the serious mistreatment, unlawful detention, and institutional failures suffered by Plaintiff Thomas McCool ("Tommy") while enrolled as a student at Phillips Academy ("Andover"). Tommy was admitted to Andover in 2019 as a boarding student.

In 2022, Andover developed an Individualized Education Plan (IEP) for Tommy, entitling him to 50% extended time on assignments and timed writing, access to audiobooks, preferential seating, and note-taking assistance. Almost immediately, Andover failed to implement these accommodations consistently, despite repeated efforts by Tommy's parents to ensure compliance.

In April 2023, a secret society known as Truth, Unity, and Brotherhood ("TUBs") publicly re-emerged on campus. Although such organizations are explicitly banned under Andover's policies, TUBs had long operated with tacit institutional tolerance. That spring, Tommy received a coercive and threatening message from an upperclassman instructing him to report to a graveyard for a secret initiation. There, Tommy was physically assaulted, pushed,

1

waterboarded, and urinated on against his will. He never sought membership in TUBs and feared retaliation if he resisted.

In May of 2024, Tommy was again coerced by TUBs to recruit new members. Unwilling to perpetuate the abuse he endured, he suggested two friends but did not subject them to harm. He did not haze, harass, or harm either boy as had been done to him.

Days later, on May 13, 2024, Andover accused Tommy of hazing and detained him for over 18 hours at Sykes Wellness Center, without access to his parents or an advisor. Tommy was subjected to an interview with two attorneys who were misrepresented to Tommy as "investigators" without being informed of his rights, the nature of the process, or the identity of those questioning him. At all relevant times, Tommy was a minor. His parents were inadequately informed of the situation.

Andover failed Tommy at every level: it ignored his IEP, allowed a known secret society to operate with impunity, subjected him to a secretive and coercive disciplinary process in violation of its own policies, and ultimately forced him to leave the school under duress. He was isolated, intimidated, and denied basic rights—both as a student and as a child. Andover's actions were especially egregious as Tommy was a boarding student whose parents lived across the country. Andover owed a special duty of care to Tommy not only as his educator but as the entity responsible for his well-being. Through its acts and omissions, Andover breached its contractual obligations, failed in its duty of care, and caused lasting emotional and academic harm to a vulnerable student. As a result, Tommy's academic future was derailed, his mental and physical health severely compromised, and his once-promising athletic career interrupted.

## PARTIES

1. Plaintiff, Thomas McCool ("Tommy"), is an individual who was a minor and a student at Phillips Academy Andover at all relevant times of the Complaint.

2. Plaintiffs, Meghan and Brian McCool ("Mrs. McCool" and "Mr. McCool"), are married individuals, residing in the state of California. As the parents of Tommy, they bring this claim on behalf of themselves.

3. Defendant, Phillips Academy, is an independent co-educational school located in Essex County.

4. Defendant Trustees of Phillips Academy is a governing body controlling Phillips Academy. Collectively with Defendant Phillips Academy referred to as "Andover").

5. Defendant, Susan Esty, is an individual employed by Phillips Academy Andover, at all times relevant to this complaint.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is lawful pursuant to 28 U.S.C. § 1332 because the parties to this action are of diverse citizenship.

7. The amount in controversy is more than seventy-five thousand ($75,000) dollars.

8. This Court further has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1331 because the plaintiff asserts claims which present a federal question.

9. Plaintiffs have asserted claims and requests for relief pursuant to Massachusetts law that arise from the same facts and circumstances as Plaintiffs' claims and requests for relief pursuant to Federal law.

10. The Court has Supplemental Jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in Massachusetts.

## FACTS

12. Tommy was a student at Phillips Academy ("Andover") a private, co-educational preparatory school from 2019 through his forced withdrawal in 2024.

13. At all times relevant to this complaint, Tommy was a minor.

14. At all times relevant to this complaint, Tommy was perceived by the defendants to have a documented disability, which was recognized with an IEP.

15. In 2022, Andover placed Tommy on an IEP.

16. Tommy's IEP provided 50% extended time on class-graded assignments and timed writing, access to audiobooks, preferential seating, and note-taking assistance.

17. Teachers at Andover did not uniformly provide Tommy with the supports outlined in his IEP.

18. Mrs. McCool communicated with Andover about its failure to properly implement Tommy's IEP and provide him with his required supports.

19. Secret societies are banned by Andover, but it was widely known that an organization called Truth Unity Brotherhood ("TUBs") existed on campus, with the school newspaper frequently documenting their existence over the years.

20. In the Winter of 2023, Tommy received a text from an upperclassman instructing him to meet at the graveyard after dark. The message warned him not to disclose the message or activities of the group and threatened consequences that Tommy if he did not comply.

21. At the graveyard, Tommy, and another student were told they were being initiated into a brotherhood and that to test their loyalty, they were tasked with taking something from campus to "gift" to TUBs.

22. Tommy was coerced and intimidated into participating. The repeated threats and messaging left him believing he had no choice but to comply.

23. Tommy witnessed TUBs members physically harm other students.

24. As part of the initiation, Tommy was directed to a secluded, dark area at the edge of campus. He was blindfolded and forced into the trunk of a car where he was repeatedly struck by the TUBs members.

25. When the car eventually stopped, they were forced to exit blindfolded, form a line, and walk while holding onto each other, under threat of being screamed at if anyone broke formation, slipped, or let go.

26. The initiates were commanded to kneel and hold on to one another while the TUBs members spoke about the meaning of their so-called brotherhood, stating that if one member ever fell, they were expected "to lift each other back up".

27. Immediately after, the members shoved the boys, forcing them to fall and to help each other up.

28. Tommy and the other initiates were made to lie silently on their backs.

29. Freezing and afraid of both the members and potential disciplinary action from Andover, Tommy remained motionless.

30. TUBs members mocked the group for looking "thirsty" and placed a towel over Tommy's face, repeatedly pouring water on his face.

31. At one point, a member urinated on Tommy.

5

32. Terrified, Tommy did not resist or speak out.

33. Afterwards, the initiates were told that they had been initiated. They were ordered back into the car and taken to dinner with the members at their own expense.

34. In May 2024, Tommy was tasked with recruiting new members.

35. Fearing the reprisal, Tommy gave the group two names.

36. Tommy copied the same message he had received the year before, instructing the two students to meet at the graveyard.

37. At that meeting, Tommy told the two students they were not obligated to join the group and promised not to place them in danger if they chose to participate.

38. Tommy offered a loyalty task, similar in spirit to his own but without any rule-breaking or theft.

39. At no point did Tommy ever touch, threaten, or pressure the boys, and repeatedly assured them they could opt out at any time.

40. On May 13, 2024, Tommy was informed by Cluster Dean Taylor Washburn that he was being accused of hazing, participation in a secret society, and theft. He was ordered to report to Sykes Wellness Center immediately.

41. Upon arrival, his electronics were confiscated.

42. He and several other students were held overnight in separate rooms, prohibited from communicating with one another or anyone outside the Sykes Wellness Center.

43. While confined in the wellness center, Tommy was kept in isolation with no access to food for an extended period. Later, given only a blanket and a sandwich, he was allowed to keep nothing and was provided only with a pencil and paper.

44. Despite it being finals week, Tommy was denied access to his school computer, course materials, and communication with teachers.

45. Andover failed to timely notify Tommy's parents of the allegations or his detainment.

46. Eventually, they received an email notifying them about his detainment, but they were unable to reach Tommy on his cell, and they were told he was unavailable when they called the wellness center.

47. Out of concern for their son's safety, Tommy's parents contacted the Andover Police to request a wellness check.

48. Dean Esty informed the police that Tommy was an "immediate threat," purportedly justifying his involuntary detainment.

49. On May 14th Dean Esty sent a letter outlining the investigation, naming crisis counselor Ryan Milligan as the interviewer.

50. However, on May 14, 2024, Tommy, a minor, was not interviewed by crisis counselor Milligan; instead, he was interrogated by two attorneys hired by Andover. Without being informed of his rights, the interrogator's identity, or the nature and purpose of the questioning, the ability to pause the interview, or contact his parents.

51. Tommy only later discovered he had these rights via email after regaining his electronics.

52. In removing access to Tommy's electronics, they denied him access to basic information about his procedural and due process protections.

53. Despite a documented IEP, Tommy was provided with no accommodations for attention or processing needs during the investigation.

7

54. Following the interview, Tommy was returned to the wellness center and was ordered to leave campus.

55. His parents, located on the West Coast, were not notified of his removal until midday and were unable to either fly to Andover to retrieve Tommy or put Tommy on a flight to return home. Tommy had to leave campus with a friend's family.

56. Denied access to academic materials, coursework, and his teachers, Tommy's parents contacted Dean Washburn to express their concerns.

57. Dean Washburn told them that schoolwork would be excused, and class grades would be finalized based on work to date.

58. Contrary to this assurance, several of Tommy's teachers penalized him for missing schoolwork and final exams.

59. On May 19, 2024, with the investigation ongoing, Dean Esty began pressuring Tommy to withdraw from Andover.

60. On May 23rd, Andover explained to Tommy and his parents that he was likely facing disciplinary action with the possibility of suspension and expulsion.

61. Tommy was further pressured to withdraw from school by Dean Esty. She told him he could voluntarily withdraw without the incident being recorded on his disciplinary record.

62. That same day, Andover sent a community-wide email, though it did not name Tommy, the larger community understood that the email was about him as he had been removed from Andover.

63. On May 26, 2024, feeling coerced and with no viable alternatives, Tommy withdrew from Andover.

8

64. On May 26, Tommy flew home to California, physically and emotionally depleted, he arrived 40 pounds lighter than when he had left for school in January.

65. Tommy applied to Avon Old Farms and Taft School, but both schools unexpectedly declined to move forward with his applications, despite previously expressing sincere interest in him.

66. Upon information and belief, Dean Esty interfered with his applications by providing damaging or misleading information in violation of her promise that no discipline would be maintained in his records.

67. Tommy, without any other alternatives available, enrolled in a San Diego public school where he planned to play lacrosse through the California Interscholastic Federation ("CIF").

68. However, Tommy was barred from competing after Dean Esty reported to the CIF that Tommy's withdrawal involved pending disciplinary action.

69. As a result, Tommy's opportunity to play collegiate lacrosse, including at Tuff's University where he was recruited, is at risk.

70. Tommy has required psychological counseling and continues to experience trauma and emotional and psychological harm as a direct result of Andover and Dean Esty's actions.

## COUNT I
**Breach of Contract**
**(All Defendants)**

71. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

72. The parties entered into a contract under which Tommy would attend Andover in exchange for tuition paid to the academy.

73. The Defendants breached this agreement by improperly removing Tommy from Andover.

74. Defendants failed to abide by its policies as outlined in the student handbook, which outlines expectations for enrollment.

75. Due to the Defendant's actions, Tommy and his parents suffered harm, and the actions of the Defendant have resulted in damages to the Plaintiffs.

## COUNT II

### Disability Discrimination in Violation of 42 U.S.C. 12101, et seq.
### (All Defendants)

76. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

77. Defendants, at all times relevant to this Complaint, were acting under the color of state law.

78. Defendants' conduct, as alleged above, constitutes unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.

79. As a direct and proximate result of the Defendants' unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq., Tommy has suffered emotional distress and anguish of mind and continues to suffer harm.

## COUNT III
### Failure to Accommodate in Violation of 42 U.S.C. 12101, et seq.
### (All Defendants)

80. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

81. Defendants, at all times relevant to this Complaint, were acting under the color of state law.

82. Defendants' conduct, by failing to adhere to Tommy's IEP as alleged above, constitutes unlawful failure to accommodate a disability in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.

83. Plaintiffs took all appropriate steps to work with APS to accommodate Tommy's disabilities.

84. Defendants failed to effectuate Tommy's IEP plan and provide services during the disciplinary proceedings to cause Tommy further harm and incurring harm.

85. As a direct and proximate result of the Defendants' unlawful disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq., Tommy has suffered emotional distress and anguish of mind.

### COUNT IV
### Defamation
### (All Defendants)

86. Plaintiffs repeat and realleged the preceding paragraphs as fully set forth herein.

87. Defendants made false and defamatory statements about Tommy in an email published to the Andover Community on May 23, 2024, regarding the incidents described herein.

88. The false and defamatory statements were published via a listserv to the entire Andover community.

89. Defendants were negligent in their publication and failed to exercise reasonable care to determine the veracity of their statements.

90. Tommy was harmed and continues to suffer harm resulting in damages due to the actions of the Defendants.

### COUNT IV
### Negligence

11

**(All Defendants)**

91. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

92. Tommy's care, welfare, and physical custody were entrusted to the Defendants as a boarding student and student at Andover.

93. Defendants owed Tommy, as a minor student at its school, a duty to protect him while in their care.

94. Defendants owed Tommy, a minor, a special duty of care, in addition to the duty of ordinary care, to protect her from harm.

95. Defendants by and through its agents knew or should have known of the harm and likelihood of future harm posed to Tommy.

96. Defendants breached the duty of care they owed to Tommy by allowing students to harass and physically abuse Tommy, cause emotional distress and physical harm, by failing to adequately supervise Andover students, and by failing to investigate or otherwise prevent violations thereof properly.

97. Defendants further breached their duty by failing to act in a reasonable manner to protect Tommy and his interests and by engaging in torturous activities that caused damages to Tommy.

98. Tommy, as a result of the Defendants' actions and inactions, suffered and continues to suffer harm, which has caused Tommy to suffer Damages.

### COUNT V
**Negligent Supervision**
**(All Defendants)**

99. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

100. Tommy's care, welfare, and physical custody were temporarily entrusted to Andover.

101. Defendants owed Tommy, as a minor student at it school, a duty to protect him as he was entrusted in their care.

102. Defendants owed Tommy, a minor, a special duty of care, in addition to the duty of ordinary care, to protect him from harm.

103. Defendants' failure to supervise and properly train staff caused harm to Tommy.

104. Defendants' failure to supervise other students caused harm to Tommy. Defendants allowed students to harass and physically abuse Tommy and cause emotional distress and physical harm by failing to adequately supervise Andover students and by failing to investigate or otherwise prevent violations thereof properly.

105. Defendants breached the duty of care they owed to Tommy by allowing the administration and staff to disregard their policies, wrongfully detaining Tommy, intentionally denying Tommy his due process rights, and failing to protect Tommy's safety.

106. Tommy, because of Defendants' actions and inactions, suffered and continues to suffer harm, which has caused damage to Tommy.

## COUNT VI
### Negligent Hiring and Retention
### (Andover)

107. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

108. Tommy's care, welfare, and physical custody were temporarily entrusted to Andover.

109. Andover owed Tommy, as a minor student at its schools, a duty to protect him while entrusted in their care.

13

110. Andover owed Tommy, a minor, a special duty of care – in addition to the duty of ordinary care – to protect him from harm.

111. Andover by and through its agents, knew or should have known of the harm and likelihood of future harm posed against Tommy by its administrators, staff, and personnel through by their failure to exercise reasonable care including but not limited to allowing students to repeatedly and pervasively harass, and physically abuse, and bully Tommy, by failing to investigate or otherwise prevent violations thereof properly and by knowingly, recklessly or negligently hiring and retaining individuals including but not limited to Dean Esty, who repeatedly failed to meet her duty to protect Tommy, to ensure his civil rights, to comply with state and federal law, and who falsely imprisoned Tommy and denied him a fair access to education.

112. Despite Andover's knowledge of the existence of TUBS, Andover allowed for students to students to repeatedly and pervasively harass, physically abuse, and bully Tommy, by failing to investigate or otherwise prevent violations.

113. Tommy as a result of Andover's actions and inactions, suffered and continues to suffer harm.

## COUNT VII
### Negligent Infliction of Emotional Distress
### (All Defendants)

114. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

115. At all times relevant to this Complaint, Defendants had a special duty of care to Tommy as a boarding student.

116. Defendants and its agents knew, or in the exercise of ordinary care should have known, that unless Defendants and its agents ceased to engage in the aforementioned acts or

intervened to protect Tommy from the acts of the other students as alleged herein, that the conduct would continue, thereby subjecting Tommy to personal injury and emotional distress breaching their duty of care to Tommy.

117. Tommy, as a result of the Defendants' actions and inactions, suffered and continues to suffer harm, including significant emotional distress, resulting in him seeking therapeutic treatment and maintenance with medication.

## COUNT VIII
### Intentional Infliction of Emotional Distress
### (All Defendants)

118. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

119. The Defendants intended to inflict emotional distress upon Tommy.

120. The conduct of the defendants was extreme and outrageous, including but not limited to forcibly detaining Tommy without access to his parents or advisors, who resultingly had to call the local police in order to speak to their son.

121. As a proximate and foreseeable result of Defendants' conduct, Plaintiffs suffered physical and emotional injuries and suffered humiliation, embarrassment, and severe emotional distress.

## COUNT IX
### Deliberate Indifference
### (All Defendants)

122. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

123. Tommy was subjected to severe and pervasive harassment, physical abuse, bullying, denial of his civil rights, false imprisonment, and denied fair access to education.

124. The harassment, abuse, bullying, false imprisonment, and denial of his rights caused Tommy to be deprived of educational opportunities and benefits.

125. Defendants knew of TUBs and the associated hazing, which occurred in its programs and activities.

126. Defendants further knew of Tommy's false imprisonment, denial of his civil rights and a fair access to education.

127. Defendants were deliberately indifferent to Tommy's harassment and abuse, false imprisonment, and denial of an education, and its response, or lack thereof, is clearly unreasonable in light of the known circumstances.

128. Tommy, as a result of Defendants' actions and inactions, suffered and continues to suffer harm.

## COUNT X
### Tortious Interference with Contractual Relations
### (Dean Esty)

129. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

130. Upon moving to home to California Tommy applied for admission at other New England boarding schools.

131. These schools had expressed interest in Tommy and his lacrosse talents.

132. Unexpectedly, the schools stopped engaging with Tommy.

133. It is believed that Dean Esty interfered with Tommy's enrollment in these schools.

134. Additionally, after returning home and enrolling in public school, Tommy agreed to play lacrosse through the CIF.

135. Dean Esty knew of Tommy's intent to play lacrosse with the CIF.

136. Dean Esty intentionally and maliciously interfered with Tommy's agreement to play lacrosse through the CIF by wrongfully saying Tommy was dismissed from Andover pending discipline.

137. As a result of Dean Esty's actions, Tommy was unable to play lacrosse through the CIF.

## COUNT XI
### False imprisonment
### (All Defendants)

138. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

139. Defendants intentionally and purposefully detained Tommy in a one of the rooms previously used to quarantine students with Covid, in the Wellness Center for at least 18 hours, by himself, with limited access to food, no electronics, initially no access to his parents, despite being a minor, and thereafter limited access to his parents, no support person, and without explanation as to how long he would be there and without the ability to leave.

140. Tommy was aware of this confinement.

141. Tommy did not consent to this confinement.

142. The defendants lacked the authority to confine Tommy in the Wellness Center.

143. Defendants caused Tommy to be detained in the Wellness Center.

144. As a result of Tommy's confinement, Tommy suffered harm.

## COUNT XII
### Loss of Consortium
### (Susan Esty)

145. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

146. Meghan and Brian are the parents of Tommy.

147. As a direct and proximate cause of Dean Esty's negligence, intentional interference with Tommy's contractual relations, and denying Tommy his due process rights resulting in physical and emotional harm, Mr. and Mrs. McCool suffered damages and severe emotional distress, and they were deprived of their son's society and companionship.

148. Dean Esty's unfounded allegations caused significant turmoil and fear in a family that their son would not physically and emotionally recover, his future playing lacrosse at Tufts would be taken away, and that he and their family would forever be impacted by Dean Esty's actions.

149. Plaintiffs have suffered and continue to suffer harm.

WHEREFORE Plaintiffs demand judgment against all Defendants in the full amount of their damages, plus interest, costs, and attorneys' fees.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

> Plaintiffs,
> Thomas McCool, Brian McCool, and Meghan McCool
> By their attorney,
>
> *Sol J. Cohen*
>
> _____
> Sol J. Cohen, Esq.
> BBO # 630776
> Coren Lichtenstein, LLP
> 60 Walnut Street, 4th Floor
> Wellesley, MA 02481
> (781) 997-1600
> EMAIL: scohen@cl-lawgroup.com

DATE: July 28, 2025